IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

01 NOV 21  AM 10: 46

JODY BUTLER,                    }
                                }
        Plaintiff,              }
                                }          CIVIL ACTION NO.
v.                              }
                                }          01-AR-2415-M
HOMES OF LEGEND, INC.,          }
                                }
        Defendant.              }

**ENTERED**

NOV 21 2001

### MEMORANDUM OPINION

The court has before it a motion by defendant, Homes of
Legend, Inc. ("Homes of Legend"), to compel the binding arbitration
of the above-styled wage and hour claim filed in this court by
plaintiff, Jody Butler ("Butler").  The motion was set on this
court's regular motion docket on November 16, 2001.  Movant did not
appear for oral argument.  Butler was an employee of Homes of
Legend.  He invokes the Fair Labor Standards Act, 29 U.S.C. §§ 201,
*et seq*.  He does not deny signing the arbitration agreement that is
required of all Homes of Legend employees but argues that the
agreement is not enforceable.

The court finds the following reasons why this particular
arbitration agreement cannot be enforced against Butler:

    1.  The agreement provides that all controversies between the
        signatories shall be settled "under common law
        arbitration."  The agreement is to be construed against
        the drafting party, in this instance, Homes of Legend.
        This court is, of course, aware of the Federal

Arbitration Act ("the FAA"), 9 U.S.C. §§ 6 et seq., but this court is unfamiliar with anything called "common law arbitration," and has been unable to find such a common law concept in either *Blackstone's Commentaries* or in *Black's Law Dictionary*. The written agreement between Butler and Homes of Legend does not mention the FAA; and Homes of Legend nowhere invokes the FAA. The fact that Homes of Legend makes a pass at suggesting that its business somehow involves interstate commerce is not the equivalent of an invocation of the FAA. In other words, Homes of Legend has not given this court any reason for asserting jurisdiction over its motion.

If jurisdiction can be intuited, and if the law of Alabama provides the factual circumstances to prove the "substantial effect" on interstate commerce that makes an arbitration clause enforceable under the FAA (that is, if the FAA applies when not invoked), this case would be controlled by *Sisters of Visitation v. Cochran Plastering Co.*, 775 So. 2d 759 (Ala. 2000), which was reinforced as recently as last week, by *Alternative Financial Solutions v. Colburn*, _____ So. 2d _____, 2001 WL 1451106 (Ala. November 16, 2000). If Homes of Legend had invoked the FAA, an evidentiary hearing to determine the "effect," if

2

any, on interstate commerce of the relationship between Butler and Homes of Legend would be in order.   But, on the face of the present motion, any effect on interstate commerce is inconsequential.  The allegations relating to interstate commerce are boilerplate.  They fit almost any employer.

2.   This particular agreement calls for each party to "bear the expense of its own arbitrator and equally bear the expense of the umpire and of the arbitration."   In *Cole v. Burns Int'l Sec. Serv.*, 105 F.3d 1465 (D.C. Cir. 1997), the District of Columbia Circuit held that an employer cannot require an employee both to arbitrate all disputes and to pay any part of the arbitrator's fees. That court found no reason to believe that *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 111 S. Ct. 1647 (1991), can be construed to suggest that the arbitration of statutory claims can be made mandatory in the absence of an employer agreement to pay the fees. The District of Columbia Circuit reasoned that public policy, as well as "due process," confer both substantive rights and a reasonable right of access to a neutral forum in which those rights can be vindicated—rights that necessarily lead to the conclusion that an employee cannot be required to pay for the services of his

3

"judge."   To like effect is *Armendariz v. Foundation
Health Psychiatric Services, Inc.*, 6 P.3d 669 (Cal.
2000), in which the Supreme Court of California concluded
that when an employer imposes mandatory arbitration as a
condition of employment, the employee cannot be required
to bear any kind of expense that he would not be required
to bear if he were free to bring an action in court.   The
California court rejected the employer's argument that,
because the employee's cost of arbitration will be less
than his going to court, he should be happy with the net
benefit being conferred on him.   Without any precedent
from the Eleventh Circuit or from the Supreme Court, this
court sides with the District of Columbia Circuit and
with the California court and finds that an employee
cannot be required to bear any of the costs of mandatory
arbitration where his employment is conditional upon his
signing of an arbitration agreement.

Judge Hancock of this court has undertaken to solve this
problem by requiring that the entire cost of arbitration
be borne by an employer who seeks to enforce a mandatory
arbitration clause, even though the written contract
itself provides for the sharing of such expense.   While
this device is attractive, it, in effect, constitutes an

4

amendment to the contract between the parties.   This
court respectfully declines to adopt Judge Hancock's
solution, which, although it meets the major criticisms
leveled by the District of Columbia Circuit and the
California court, creates other concerns.

3.    Assuming *arguendo*, that there is nothing fundamentally
wrong with making an employee share in the cost of
mandatory arbitration, the question raised by Chief
Justice Rehnquist in *Green Tree Financial Corp. v.
Randolph*, 531 U.S. 79, 121 S. Ct. 513 (2000), remains,
namely, whether the cost of arbitration to Butler would
be "prohibitive." On this question, the burden of proof
would be on Butler, that is if he knew what it was that
he had to prove. Again, construing the agreement against
the drafting party, any arbitration here would be "in
accordance with the rules of the American Arbitration
Association **or** the Alabama Bar Association Mediation
Center-ARL Program" (emphasis supplied). Because the two
procedures are in the alternative, Butler does not know
which party is to choose between the two sets of rules,
one of which may be cheaper than the other and one of
which may be better than the other. Based on the present
record, and without either party having purported to
choose between procedures, the court is unable to address

5

the question of whether the cost to Butler of an arbitration would be "prohibitive." If the issue had been properly framed by movant, an interesting factual dispute would undoubtedly be presented.

4.   Last but not least, the court cannot ascertain from the pleadings whether Homes of Legend has exercised its claimed right to arbitrate by "mak[ing] a written demand for arbitration" within "sixty (60) days from the date of the controversy." According to the arbitration agreement itself, this is the only way to trigger the right to arbitration. Butler's complaint alleges that he brought the controversy to the attention of Homes of Legend on July 31, 2001. Homes of Legend did not demand arbitration until the filing of its motion on November 9, 2001, much longer than 60 days after the controversy surfaced.

**Conclusion**

The court does not agree with Butler that this arbitration agreement did not fairly inform him that a statutory wage and hour claim would be subject to arbitration. But, for the foregoing separate and several reasons, the defendant's motion to stay and to compel arbitration will be denied by separate order.

6

DONE this ___2/st___ day of November, 2001.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE